# Exhibit 1: Declaration of David Broiles

## DECLARATION OF DAVID BROILES

1. My name is David Broiles. I am competent to make this declaration. The statements made herein are true based on my personal knowledge or, where I state opinions, they are based on experience and training that qualifies me to assert the opinion.

2. This declaration is made in support of the Plaintiffs' Response in Opposition to the Defendant's Motion to Sever the Claims of SHOW, Inc. and its supporting Memorandum. Doc. nos. 18-19. I am an attorney representing the Plaintiffs. They have been my clients in related disputes with the USDA since September 2011. I acted as counsel in SHOW INC., ET AL v. USDA, ACTION NO. 4:12-cv-429-Y in this Court, and in *Contender Farms L.L.P. v. U.S. Dept. of Agriculture*, 779 F.3d 258 (2015) ("*Contender I*" hereafter).

3. I am licensed to practice law in Texas, and have for 48 years been involved in trials and appeals, on many occasions in federal courts. I am familiar with federal court practice both at the district court level and in federal appellate courts. My experience includes practice in this Court in the Fort Worth Division of the Northern District of Texas, including trying cases before the presiding Judge to the court and to a jury. I have represented parties in cases in this Court decided on motions for summary judgement.

4. I am familiar with the factors other courts have considered relevant in deciding motions to sever under Rules 20 and 21. These factors include whether the defendant will be unduly prejudiced by evidence offered at trial on dissimilar claims involving unrelated parties. Another factor is whether joinder of claims or parties may confuse or prejudice the jury, or cause the admission of evidence from one party irrelevant and prejudicial to other parties that cannot be cured by an instruction. An overriding factor is whether severance furthers economy in the use of



4

judicial resources and the parties' time and money. Rule 20((b) authorizes the court "to protect a party against embarrassment, delay, expense, or other prejudice."

5. The USDA filed its motion to sever before this case is two months old. It has not filed an answer, no Initial Scheduling Order has issued, there has been no Rule 26 conference and initial disclosures have not been made. There is no evidence from which this Court can decide severance is appropriate "to protect a party against embarrassment, delay, expense or other prejudice." FRCP 20(b).

6. A motion to sever cannot be decided based on the pleadings alone. Defendant's attempt to treat its motion as such rests solely on an inaccurate and misleading reading of the Plaintiffs' Amended Complaint. Doc. no. 11. For example, in its memorandum the USDA contends that "SHOW asserts a claim against the USDA under the APA challenging the agency's requests for … records from SHOW (see id. ¶99), and asserts a claim under the Privacy Act challenging the accuracy of information on the USDA's website regarding the status of a prior administrative proceeding against SHOW..… See id. ¶¶ 50-53." Doc. 19, p. 8.

7. This does not accurately describe SHOW's claims in the Amended Complaint. SHOW is not mentioned in the Privacy Act claim, which is made solely on behalf of the McGartlands in paragraphs 66-71. The Privacy Act protects only individuals' privacy. SHOW's complaint about the USDA unlawfully identifying it as having violated the HPA, in Amended Complaint, doc. no. 11, page 10, paragraphs 50-53, falls under this heading: "**C. Under Both Administrative Enforcement Programs the USDA Publishes the Names of People Found in Violation, Their Alleged Violations and the Form 7060 Warning Letters.**" SHOW's and the McGartlands' claims arise from the same unauthorized and unlawful actions of the USDA – publishing their names on two database lists that falsely identify them as having violated the HPA.

5

Case 4:16-cv-00163-Y   ocument 25   Filed 05/05/16   Page   of 106   PageID 1711

8. The central issue in any motion to sever rests on evidence that permits the court "to protect a party against embarrassment, delay, expense, or other prejudice." FRCP 20(b). The USDA has presented no evidence on these issues; indeed its motion does not claim it needs protection against embarrassment, delay, expense or other prejudice. The Motion to Sever cannot be decided absent a relevant evidentiary record. I am mindful of criticism that I burden the Court with voluminous filings, so I have tried to make a bare-bones proof of relevant facts, and have tried to keep documentary evidence to a minimum.

9. The evidence proves how the Plaintiffs' claims arise out of common occurrences or transactions, and overlap on issues of fact and law, as reflected in the Plaintiffs' "Amended Complaint for Declaratory and Injunctive Relief", doc. #11, which the Court should judicially notice, and when referring to that document, I will cite it using "Amended Complaint, doc. # 11, p.__, ¶__." Exhibit 2, attached, is a copy of the Plaintiffs' proposed "Second Amended Complaint." A motion for leave to file it is pending. Doc. no. 22. This exhibit sets forth the claims Plaintiffs are presently making. This document will be referred to by "Exhibit 2, p.__, ¶__." Exhibits 3 through 8 prove that SHOW's claims arise out of the same occurrences about which the McGartlands complain, and that all the Plaintiffs' contentions involve one overarching issue of law.

10. This case will probably be decided on summary judgment motions though it is too early in the case to know if there will be fact disputes precluding summary judgment. If there are, and this case has to be tried, the trial will be before the court, not a jury. Thus, joinder of the parties and their claims in one case will not confuse or prejudice the jury or cause the admission of evidence from one party irrelevant to other parties that cannot be cured by an instruction.

6

Case 4:16-cv-00163-Y   Document 25   Filed 05/05/16   Page   of 106   PageID 1712

11. The USDA has offered no evidence a severance will further economy in the use of judicial resources and the parties' time and money. In the *Contender I*, had the Court severed the McGartland claims from SHOW's claims, the cost and expense to the Plaintiffs would have been considerably higher than they were.

12. The parties in *Contender I* and this case are the same. The legal issue is the same — whether the HPA authorizes the USDA to penalize people for violations of the Act other than in proceedings before the Secretary after notice and hearing. 15 U.S.C. §1825(b). This court should take judicial notice of its decision in *Contender I* about the time expended by Plaintiffs' attorneys, the fees and expenses of the Plaintiffs, and the cost to the government, as set forth in its March 3, 2016, Amended Order Partially Granting Motion for Attorneys' Fees and Expenses, in *SHOW, Inc. v. United States Department of Agriculture*, Case No. 4:12-cv-00429-Y, doc. #132. Had SHOW's claims been resolved in a case separate from McGartland and Contender Farms, the time the attorneys spent prosecuting the case for the Plaintiffs would have greatly increased because of duplication of effort.

13. In *Contender I*, had SHOW been in a separate case from McGartland and Contender Farms, the Court would have had to maintain two case files, necessitating review of many duplicative filings and exhibits. This would not have been efficient or cost effective. It would have been a waste of the Court's time.

14. Trying the McGartland and SHOW claims in one case will not cause any embarrassment to the USDA that could be avoided by severing SHOW's claims into a separate lawsuit. Nor will trying all claims in one case delay the resolution of the dispute in a way that having two lawsuits will avoid. Trying the claims in one lawsuit will not increase the expenses of the parties or waste the Court's time.

7

15. The gravamen to the Plaintiffs' complaint in this lawsuit is that HPA §1825(b) prohibits the USDA from penalizing people for violating the Act other than in a Formal Enforcement Proceeding that meets the due process requirements of the HPA §1825(b) and (d), APA §§551, 554, 556 and 558, and 7 C.F.R. §1.130 et seq. SHOW and the McGartlands jointly contend that contrary to these provisions, the USDA uses three alternative enforcement schemes under which it takes enforcement actions to decide whether a person or entity has violated the Act for which they should be penalized. The unauthorized and unlawful penalty the USDA imposes that is common to all three enforcement schemes is publishing the violator's name on USDA website databases, falsely and misleadingly identifying them as HPA violators and specifying the violation. See Exhibit. 2 attached: pp. 6-7, ¶s 6-7; p. 20, ¶s 17-19; pp. 28-28, ¶s 39-43; pp. 28-29, ¶s 46-47; p. 30, ¶s 52-53; p. 34-35, ¶ 67; p. 41, ¶s 89-91 and pp. 44-48, ¶s 102-119 and Amended Complaint, doc. no. 11: pp. 2-29, ¶s 7-16, 18, 23, 32, 36-51, 64, 79-83, 86-87, 88-92, 99, 100, 102-103, and 105-106.

16. The USDA publishes the Searchable Violations List and the Enforcement Actions List, both of which identify people and entities the Agency has taken enforcement actions against, where it has decided those identified violated the HPA and identifying their violations. See Exhibit 2 attached: pp. 26-28, ¶s 39-43; p. 30, ¶s 52-53; p 41, ¶s 89-91; pp. 48-49, ¶s 118-119 and Amended Complaint, doc. no. 11: pp. 7-9, ¶s 23-25; p. 9, ¶32; pp. 11-15, ¶s 32-53; pp. 27-29, ¶s 100, 102-103, and 105-106. SHOW and the McGartlands claim that though they have been listed as violators, they have not been determined to have violated the HPA under procedure Congress established in HPA §1825(b). SHOW and the McGartlands are listed in both databases as violators of the HPA. See attached Exhibits 3, 4 and 6.

8

17. This dispute about the USDA's publications began on June 8, 2015, when Mike McGartland saw that the USDA had published a list identifying him as having violated the HPA. An attorney for the USDA was contacted to complain that the "APHIS-Animal Care Horse Protection Violations [Searchable]" (referred to here as the "Searchable Violations List") identified the McGartlands as HPA violators. See Exhibit 3 attached, pp. 51-59. The list identified Lee and Mike McGartland as "violators" of the Act for using a foreign substance when entering "Low on Gin" and for a scar rule violation when entering "He's Shady In Black" in August 2012. Exhibit 3, pp. 51 and 57-59.

18. On June 21, 2015, I printed the complete 79 page Searchable Violations List. Exhibit 4, pp. 61-65, consists of excerpts from the Searchable Violations List. Page 1, the cover page, reflects the title: "USDA-APHIS-Animal Care Horse Protection Enforcement Actions 2009-2013," and notes "This is an archive site." Exhibit 4, p. 61. The cover page identifies what each column represents. The first column is for the "Violator name" followed to the right by a column for the "Horse Name," then a column for the "Violation date" with a final column listing the "Violation."

> On page 60 of 79, Mike McGartland is named under "Violator," "He's Shady in Black" is the horse, "8/30/12" is under "Violation Date" and "Foreign Substance" is the "Violation." Exhibit 4, p. 62.
>
> On page 61 of 79, Mike McGartland, Lee McGartland and Chris Alexander, the trainer, are listed as "Violators," "Low on Gin" is the horse, the "Violation Date" is 8/23/2012, and the "Violation" is "Foreign Substance." Exhibit 4, p. 63.
>
> On page 68 of 79, SHOW is identified under "Violator Name," no horse is named, the "Violation Date" is 7/14/12 and 7/14/13, and the "Violation" is "HIO DQP CERTIFICATION." Exhibit 4, p. 64.
>
> On page 76 of 79, Mike McGartland, Lee McGartland and the trainer Chris Alexander are listed as "Violators" for the horse "He' Shady in Black" for a "Scar Rule" violation on 8/30/12. Exhibit 4, p. 65.

9

Case 4:16-cv-00163-Y   Document 25   Filed 05/05/16   Page   of 106   PageID 1715

19. Clicking the symbol in the left hand column under "View" opens the USDA's supporting document. There was no document for the 6/23/12 foreign substance for "Low on Gin" where Mike McGartland was listed as the violator. Exhibit 5 contains the documents that were available on the website for the McGartlands' and Contender's horses when this list was printed on June 21, 2015. The document is the APHIS Form 7060, and all of them are substantially alike. See Exhibit 5 attached, pages 67-75.

20. The first Form 7060 identifies Mike McGartland in the box "VIOLATOR" in "CASE NO. TN130373-AC," Exhibit 5, p. 67. The document, dated 10/18/13, is a "OFFICIAL WARNING VIOLATION OF FEDERAL REGULATIONS" and reflects "Date of Violation: August 23, 2012." Exhibit 5, p. 67. The "Unlawful Acts" are for "15 U.S.C. § 1824(7)" and "9 C.F.R. § 11.2(c) Prohibition concerning exhibitors – Substances." Exhibit 5, p. 67. The horse is " 'Low on Gin' which tested positive for Sulfur." Mr. McGartland is warned that "violations of the regulations can have serious and costly impact detrimental to the public interest. Any further violation of these regulations may result in the assessment of a civil penalty or criminal prosecution." Exhibit 5, p. 67. The other Form 7060s for "He's Shady in Black," Lee McGartland and Chris Alexander are similar to the one I have summarized. Exhibit 5, pp. 68-75.

21. The second list published by the USDA is the Enforcement Actions List. Exhibit 6, pages 77-93, contains a selection of pages printed from that list on April 23, 2016. The Exhibit includes the home page, and the "USDA APHIS | Horse Protection Act Enforcement" pages, which provide a link to "HPA Enforcement Actions." In the Plaintiffs' complaints this list is referred to as the "Enforcement Actions List." Clicking the link opens the list, which is titled "USDA APHIS | Enforcement Actions." The selected pages reflect entries for SHOW and the McGartlands.

10

22. Opening January 2014, under Complaints, identifies a USDA enforcement action against SHOW in case number TN30284-AC. Exhibit 6, p. 82. Clicking that line produces Complaint No. 14-0056 dated January 9, 2014, alleging violations of the regulations by not adopting the mandatory minimum suspension penalties. Exhibit 6, pp. 86-89. SHOW complains in the Amended Complaint, paragraphs 50-55 and in the Second Amended Complaint, paragraphs 89-91 of the USDA identifying it as a violator because SHOW cannot violate the Act and, in fact, won the case, which was dismissed with prejudice in April 2015.

23. The same Enforcement Actions List that identifies the USDA's enforcement action against SHOW also identifies Lee and Mike McGartland as violators. Exhibit 6, p. 83. Opening February 2016, then HPA, then 7060s, identifies both Mike and Lee McGartland in cases numbered TN150127-AC and TN150128-AC. Exhibit 6, pp. 82-83. Clicking Lee McGartland's name produces a Form 7060 issued 2/17/16 in case TN150128-AC, with her named as the VIOLATOR. The "Date of Violation: August 26, 2014" of "15 U.S.C. § 1824(2)(A) Unlawful acts – Showing" the horse " 'She's A Shady Sister'... where the horse was found in violation of the scar rule during a post-show inspection." The "Official Warning" was provided "for the violation(s) described above." Exhibit 6, p. 90.

24. Clicking on Mike McGartland's name produces a Form 7060 in cases numbered "TN150127-AC & TN150128-AC" naming Mike McGartland as the "VIOLATOR." Exhibit 6, pp. 91-92. There are two violations listed. The first case reflects the "Date of Violation: August 26, 2014 (TN150128-AC)" for "15 U.S.C. § 1824(2)(D) Unlawful Acts – Showing....'She's A Shady Sister'... where the horse was found sore in violation of the scar rule during a post-show inspection." Exhibit 6, p. 91. A second enforcement action states the "Date of Violation: [was] August 27, 2014 (TN150127-AC) [for] "1824(2)(D) Unlawful acts – Allowing" the horse

11

Case 4:16-cv-00163-Y Document 25 Filed 05/05/16 Page of 106 PageID 1717

"Blue's Master" to be shown "where the horse was found sore and in violation of the scar rule during a pre-show inspection." Exhibit 6, pp. 91-92.

25. Again, on the April 23, 2016, list, Exhibit 6, pp. 83-84, opening March 2016, then HPA and finally 7060s, identifies Lee McGartland in case no. TN150187. Clicking on Lee McGartland's name produces a Form 7060, issued 3/8/16, in case TN150187-AC, with her named as the VIOLATOR. The "Date of Violation: July 26, 2014" for "15 U.S.C. § 1824(2)(A) Unlawful acts - Showing" the horse " 'The Royal Dollar'... where the horse was found in violation of the scar rule during a post-show inspection." Exhibit 6, p. 93. The "Official Warning" was provided to Lee McGartland "for the violation(s) described above." Exhibit 6, p. 93.

26. The Form 7060 dated March 8, 2015, to Lee McGartland, Exhibit 6, p. 93, was posted on the USDA's database on April 19, 2016, as announced in a USDA press release dated April 8, 2016. Exhibit 7, pp. 95-98. The release announces "Recent Animal Welfare Act and Horse Protection Act – Enforcement Actions." Exhibit 7, p. 95. It applauds APHIS' continuing efforts "to move swiftly and to take enforcement actions in response to animal welfare violations." Exhibit 7, p. 95. It says "APHIS is highlighting enforcement actions taken in response to violations of the ...Horse Protection Act..." and provides a link to the Enforcement Actions List, which, when opened, produces the documents in Exhibit 6. Exhibit 7, p. 95.

27. All the Plaintiffs, Mike and Lee McGartland, Contender Farms and SHOW, complain of being identified on the Enforcement Actions List. They jointly claim to be adversely affected by the USDA's action in publishing this database identifying them or their horses as having violated the HPA. The McGartlands complain that the penalties the USDA assessed against them were

12

unauthorized and violated the exclusive penalty provision Congress provided in HPA §1825(b). SHOW complains it has been listed as violating the Act when in fact it could not and did not.

28. The McGartlands and SHOW jointly complain of the USDA's action in publishing a third set of lists that are based on HIOs records of rulebook penalties assessed against people whose horses failed the HIOs' DQP inspections. *See* Amended Complaint, doc. 11, pp. 21-27, ¶s 72-99 and Ex. 2, pp. 39-48, ¶s 84-117. On its website the USDA publishes these lists: (1) "Responsible Parties for Horses Found in Violation: | 2014 | | 2013 | | 2012 | | 2011 | | 2010," (2) "Suspensions: Currently Active: | 2014 | | 2013 | | 2012 | | 2011 | | 2010" and (3) "Fines: | 2014 | | 2013 | | 2012 | | 2011 | | 2010." Amended Complaint, doc. no 11, .p. 22 , ¶ 80. Plaintiffs refer to these as the "HIO Penalty Lists."

29. The "USDA Horse Protection Program Fine Report" for 2010-2014 includes the name of the "Fined Person," the fine amount, the HIO ticket date and number, the horse's name and the HIO's name. On the June 21, 2015, report, of the 115 listed people, 99 were fined by SHOW. Amended Complaint, doc. no. 11, p. 23, ¶ 81.

30. The USDA publishes the "USDA Horse Protection Program Active Suspension Report." A June 21, 2015, copy identifies 90 individuals under the heading "Suspended Person." SHOW assessed 70 of those suspensions. Amended Complaint, doc. 11, p. 23, ¶ 82.

31. The USDA's lists of "Responsible Parties for Horses Found in Violation: | 2014 | | 2013 | | 2012 | | 2011 | | 2010|," contains a massive amount of information under the heading "USDA HORSE PROTECTION PROGRAM Responsible Parties for Horses Found in Violation." Each report lists the person's name under "Responsible Party." The "Violation" is specified. The horse is identified, along with the date of the show and the HIO that assessed the penalty. The June 21, 2015, reports total about 869 pages, with about 12,139 entries naming the "Responsible Party,"

13

identifying a "violation" and naming a horse. Amended Complaint, doc. 11, p. 23, ¶82. The first five pages of the 2014 report, printed on June 21, 2015, are included in Exhibit 8 attached, pages 99-103.

32.  In 2012, the USDA adopted regulations requiring private HIOs to assess minimum suspension penalties against people whose horses did not pass DQP inspection. The HIOs were required to deny a person who was under an HIO's suspension entry into events. If a horse failed a DQP inspection, and the person had a "prior offense," the penalty was enhanced. The HIO Penalty Lists provided the HIOs the information to comply with the regulations.

33.  These USDA's regulations were declared invalid by the Fifth Circuit, and in April 2015, this Court enjoined the USDA from enforcing them. Nonetheless, the USDA continues to publish the HIO Penalty Lists. The McGartlands seek a declaration that publishing the HIO Penalty Lists is unauthorized and contravenes the HPA and APA by penalizing people by publications that falsely and misleadingly describe them as having violated the HPA because their horses failed DQP inspections.

34.  The McGartlands seek an injunction requiring that the USDA cease publication of the HIO Penalty Lists. SHOW seeks a declaration that the USDA's publication of the HIO Penalty Lists is unauthorized and unlawful under the HPA and APA because the publication falsely characterizes SHOW as having enforced the Act against those identified on the lists.

35.  Exhibit 9, pages 104-05 is a 9/4/14, USDA letter to Stakeholders.

The statements in this declaration are true. This declaration is signed under the penalties for perjury, in Fort Worth, Texas on May _, 2016.

_____
David Broiles

14